## No. 13,136.

## State of Louisiana vs. The Debenture Guarantee and Loan Company, Limited.

### Syllabus.

1. The right of individuals to organize themselves into a corporation is not an original, but is a derivative right expressly conferred by legislative authority. Throughout the whole legislation upon the subject and behind it has constantly rested the principle that corporations should be created "for the promotion of some object of public utility," and for none other.

2. It is not only the right, but it is also the duty of the State to inquire into the

manner in which its authority to individuals to organize themselves into corporations is being exercised and to take active steps to have a claim to such authority declared unfounded, if in fact it was so.

3. Though the organization be without authority of law, the suit of the State for such purpose is properly against the organization and not against the individuals composing it.

4. Where the charter of an intending corporation authorizes it to commence business only when a specified number of shares of its stock shall have been subscribed, it is without right or authority to act as a corporation before that number has been reached in the subscription.

5. Debentures of all kinds bear sufficient resemblance to stock or bonds to make dealing in them by way of purchase and sale fall under the designation of stock jobbing which is a character of business prohibited to corporations in Louisiana.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*M. J. Cunningham,* Attorney General, (*F. E. Rainold* and *Stiffl & Madison,* of Counsel), for the State of Louisiana and August M. Benedict, Liquidator, Plaintiffs and Appellees.

*W. K. Horn* and *W. H. Rogers* for the Defendant and Appellant.

Argued and submitted May 18, 1899.
Opinion handed down June 22, 1899.
Judgment amended and rehearing refused June 30, 1899.

On the application for rehearing by BLANCHARD, J.

The opinion of the court was delivered by

NICHOLLS, C. J.   The prayer of the plaintiff's petition is that the Debenture Guarantee and Loan Co., Ltd., its president, officers, etc., be enjoined from acting as a corporation and from doing any business under its pretended charter; that it be enjoined from declaring forfeited or lapsed any rights of its debenture or certificate holders by reason of their failure to pay instalments during the pendency of this suit; for citation and for judgment maintaining and perpetuating the injunction, and declaring said pretended charter null and void; that should it be held that the organization of said company was authorized by law, its said charter be forfeited, reserving the right to apply for the appointment of a liquidator under R. S. 731;

that Jules E. Brulatour be appointed receiver to take charge of its effects and liquidate the affairs of said company, and for all orders and decrees interlocutory and final which may become necessary and proper in the premises, and for general relief.

This prayer was predicated upon allegations that the said company is not organized for any purpose for which the law authorizes the formation of corporations in this State; the said company is a debenture company formed for the sole purposes of selling or borrowing money upon its own obligations or debentures, to be paid for in monthly instalments, by which said company binds itself to pay the holders of said debentures a profit of fifty *per cent.* upon the amount invested, which said company is without the means or capacity to do, except through the continued payments of instalments by new purchasers of its debentures, whose money is used to take up older debentures, and through lapses and forfeitures on account of inability to pay monthly instalments on the part of holders of other debentures; that said entire system is not legitimate, but is vicious and unjust, and must necessarily fail within a more or less limited time; that through the active exertions of solicitors, and the glowing representations of signs, advertisements and circulars, samples of which circulars are annexed as part of the petition, people are induced to invest in these debentures with the sole hope of making the large profit promised before the inevitable crash comes; that the terms of the debentures are such that the holders are almost sure to lose the full amount invested, or, at least, half thereof, if circumstances should prevent their continued payment of instalments, and a very large proportion of the patrons of such companies are among the poorer classes, very liable to become unable to continue payments and ill able to bear such losses; that the whole system amounts to a gambling game and is demoralizing as such; that Act 36 of 1888, under which the company claims to be organized, is not a complete and valid law, by reason of its failure to provide the mode of organization of corporations thereunder, or safeguard for the protection of the public against pretended corporations exercising a State franchise, and because it only authorizes the organization of corporations for purposes not inconsistent with pre-existing laws, and the organization of all such corporations was and is prohibited by said pre-existing laws therein recognized and not repealed; that the requirement that the provisions of the laws of this State governing

corporations in general be complied with in forming corporations under said act does not amount to any provision for a mode of organization, because there are no such general laws of the State; that the laws of the State providing the mode of organization of corporations of one class, are no more general than the laws prescribing the mode of organization of corporations of any other class, and the requirements are practically different for each class; that if by the expressions used the legislative intent was that the requirements prescribed by law for the organization of corporations for public improvements, etc., should be complied with, then said corporation is not organized according to law, because many of said requirements have not been complied with; that in so far as the acts which said company pretends or claims to do can be lawfully done by corporations in this State, they pertain to corporations "otherwise specially provided for" and organized for insurance, banking or homestead purposes; that said company in its mode of organization has not complied with the requirements prescribed for corporations of either of said classes; that Act 36 of 1888, only intended to authorize the organization of corporations for the purposes of carrying on ordinary business of the different kinds which had, heretofore, been carried on only by individuals and partnerships, so that liabilities incurred in carrying on such ordinary business could be limited; that the sole object of said pretended corporation is in effect, gambling, tending to encourage the gambling spirit among the people, intended to take the chances of profit by the losses incurred by people thus demoralized, and is, therefore, *contra bonos mores,* against the public policy of the State, and contrary to the letter and spirit of Article 172 of the Constitution of 1879 and of Article 188 of the Constitution of 1898; that, therefore, the legislature did not intend to authorize the organization of such corporations, and if such was the legislative intent, said act is unconstitutional and void; that under the color of said Act 36 of 1888, but without any legal justification, a large number of such debenture companies have been organized in this State; that said companies carry on no business within the meaning of said act; that if their transactions can be designated as a business at all, it is stock jobbing and prohibited in terms by law; that said company is without capital and is insolvent; that in its organization, stock was issued to its promoters and organizers for the use of their names, and

not for any labor done, or money or property actually received, in violation of Article 238 of the Constitution of 1879; that its bonds or debentures have been issued in the same manner in order that the names of reputable citizens should be published as holders thereof, as an inducement to others to buy, in violation of the same Article of the Constitution; that while a few of such companies are claimed to be honestly conducted, it is conceded that the most of them are fraudulent and only intended as temporary means of profit by their promoters; that the theory upon which said companies operate being vicious, all are bound to fail, the larger the business any company does, the more insolvent it is, and the more widespread losses will be caused by its failure; that the organization of these debenture companies under the color of an act of the legislature, thus operating under a State franchise and imposing upon the public by reason thereof, even if a few of such companies are honestly conducted, will work great injustice and loss to the people, and be just cause for public scandal; that at present Louis C. Jacob is president and Charles B. Lanusse is secretary, and is general manager of said company, both residents of the Parish of Orleans; that said company, its officers, agents, managers, directors and stock-holders are unlawfully exercising a corporate franchise, and are acting as a corporation in this State without having been legally incorporated, and in violation of law, and will continue to do so unless enjoined therefrom; that the public interest and common justice require that said company be enjoined from declaring forfeited or lapsed the rights of any debenture holder who does not continue paying his monthly instalments during the pendency of this suit, and also, that the affairs of said company be liquidated according to law under the direction of the court for the common benefit of all creditors and other persons interested according to their respective rights.

A preliminary injunction issued *ex parte* upon this petition.

Defendant moved to set the same aside, on the ground:

1st. That the petition disclosed no cause of action for the issuance of said writ.

2nd. That the affidavit of the petition for the writ was insufficient.

3rd. That the court was without jurisdiction to grant the writ.

This motion to dissolve was sustained, and the preliminary injunction was set aside.

Defendant then peremptorily excepted:

1st.    That the Sovereign State of Louisiana is not rightfully or lawfully a party in, or to, any or all, the matter or things set forth or alleged in the petition herein filed, and is without interest in the subject matter of this suit.

2nd.    That the State in its sovereign capacity, can not, without express authority of law evincing her consent, be brought into court or be made a party litigant in any civil proceedings, and can only be in causes in which she is a real party and has an actual interest.

3rd.    That the petition does not set forth or exhibit any cause of action in the plaintiff or right in law to the relief herein sought or prayed for.

4th.    That the issues raised and the matters involved in the petition filed herein, relate, exclusively, to purely business pursuits and avocations by and between citizens in their private characters and dealings, expressly sanctioned and permitted by the Constitution and general laws of the State, and by the said Act. No. 36 of 1888, which does not involve the exercise of any public franchise, or function of any public nature, or pertaining to any of the public or sovereign rights or powers of the State.

5th.    That the said Act No. 36 of 1888, does not include or confer the exercise of any public function or franchise by the associations therein provided for, but relates exclusively to the right to carry on any lawful business or enterprise (except stock jobbing) in the manner and form therein provided for, without personal liability against the individual stock holders so engaged, and such exemption from liability under said act is a matter which relates to and concerns only the contractual relations and obligations by the individual stockholders with debenture holders and creditors of the defendant company, who are the sole parties in interest, and these can not be adjudicated or regulated at the suit of the State without the complaint and presence of the parties in interest.

The court overruled these exceptions.

Defendant answered pleading the general issue and praying to be dismissed with costs and for general relief.

The District Court, ordered, adjudged and decreed that the charter of the defendant company be annulled.

It appointed Henry Guillotte, receiver, upon his furnishing bond in the sum of five hundred dollars, to be increased on the filing of the inventory.

It ordered and decreed that an inventory be made.

Defendant appealed.

## OPINION.

The petition in this case was filed on the 20th of May, 1898, and was drawn upon the supposition, to some extent, that the charter of the defendant company was identical with those of the various debenture companies against which the State instituted actions which are now pending in this court. In this respect, there is error.

The defendant company is not a debenture company proper, and its charter is not such as described.

Its objects are declared, in its charter and amended charter to be:

1st. To guarantee the payment of debentures such as will be approved by the board of directors; in consideration of which an assessment or premium shall be levied by the board of directors on each debenture so insured in such sum as they may deem proper; said premium or assessment to be paid in advance at such time as the board may direct, until said debentures shall be regularly redeemed.

2nd. To guarantee debentures paid at a fixed date as may be determined between the company and the debenture holder on which there will be an assessment levied on each debenture, payable in advance, in such sum and in such manner as the board of directors may determine.

To loan money on debentures at such rate and amount as may be determined by the board of directors; also to buy and sell debentures as it may judge most convenient.

The third article of the charter declares:

The capital stock of this company shall be one hundred and twenty thousand dollars, divided into ten thousand shares of twelve dollars each, and shall be paid for in monthly payments of one dollar per share.

The first payment on stock is payable fifteen days after the publication of the charter; any stockholder failing to pay the instalments as prescribed in the charter, after due notice of thirty days has been given, will render his certificate null, and forfeit premium payments made on same.

This corporation shall commence business as soon as one thousand shares of its stock shall have been subscribed.

By the first section of Act No. 36 of 1888, the General Assembly enacted, "that it shall be lawful for any number of persons, not less than three, upon complying with the laws of this State governing corporations in general, to form themselves into and constitute a corporation for the purpose of carrying on any lawful business or enterprise, not otherwise specially provided for, and not inconsistent with the constitution and laws of this State; *provided* that no such corporation shall engage in stock-jobbing business of any kind; the corporation herein provided for to have a capital stock of not less than five thousand dollars."

At the time that that act was passed, there was a general law in the State, found in Section 683 of the Revised Statutes and the sections following that one, which provided "for the organization of corporations for works of public improvement, and for other purposes."

That statute made it lawful for any number of persons, not less than six, on compliance with the provisions of the act, to form themselves into a corporation, for the purposes named therein. After enumerating, specially, different purposes for which corporations could be thus formed, the act broadened the enumeration made, by declaring, that they could be formed generally for "all works of public utility and advantage," but at the same time it declared, that "no corporation shall engage in mercantile, commercial, brokerage, stock-jobbing, exchange or banking business of any kind."

Article 428 of the civil code declares that the use of corporations is to contribute, by the union and assistance of several persons, to the *promotion of some object of general utility,* although they be at the same time established for the advantage of those who are members of such corporations.

The only evidence introduced for the State, was the charter and amended charter of the defendant company, and the testimony of Charles B. Lanusse, secretary and treasurer of the company, who at the instance of the attorney general, produced a certified copy of the list of the original subscribers to the stock of the company, as recorded in the recorder's office of the recorder of mortgages in the Parish of Orleans, on November 26, 1898.

The by-laws were not introduced, and we have very little light as

to the details and methods of defendant's business through Lanusse's testimony.

From it, however, we have ascertained, that the company had been in active operation for a very considerable time, and at the date of the trial, it had two hundred and eleven shares of stock subscribed for.

It is urged in behalf of the defendant, that the State of Louisiana is not rightfully or lawfully a party in or to all the matters or things set forth in the petition filed, and is without interest in the subject-matter of the suit.

That the State in its sovereign capacity, without express authority of law evincing her consent, can not be brought into court, or be made a litigant in any civil proceeding, and can only be in causes in which she is a real party, and has an actual interest, and that the petition filed does not set forth or exhibit any cause of action in the plaintiff, or right in law to the relief herein sought.

We understand these exceptions to be leveled not only at the right of the State to institute these proceedings, but to call in question the authority of the attorney general to institute this particular suit on its behalf.

The right of the State to inaugurate proceedings against an existing corporation for forfeiture of its charter, for specially assigned and properly pleaded grounds, is not, we think, disputed. If we apprehend defendant's position, it is, that the State, after the General Assembly had authorized by statute the formation of corporations for "any lawful business," and parties have acted upon that statute, can not inaugurate proceedings to have the corporation declared "non existent," for the reason that in the opinion of the attorney general or other State officials, the object and purposes of the corporation were not wise nor judicious, but that the operation of the corporation would be bound to terminate ultimately in disaster to all parties.

That it would require legislative action of some kind to place a particular kind of business under the ban, or to authorize judicial proceedings against corporations following that particular kind of business, to warrant or justify such an action.

The right of individuals to organize themselves into a corporation, is not an original, but a derivative and expressly conferred right.

Legislative authority is essential to its exercise, and hence it is

that corporations in describing themselves either in judicial pleadings or authentic acts, always refer to themselves as a corporation created and organized under the laws of Louisiana.

The body having authority to bestow such a right or privilege has necessarily the power and authority to select the object and purposes for which it can and shall be granted, and to attach such conditions and limitations as it may think proper to the exercise of the right.

Before the passage of general laws on this subject, the General Assembly acted itself directly upon individual cases presented to it for its consideration.

The granting of the right by act of the General Assembly in a special case carried with it as a consequence legislative recognition and approval of the public utility and advantage of that corporation, and thus removed and withdrew, unless under extra-ordinary circumstances, the propriety of the existence of the same from judicial control.

In course of time, the legislature thought proper to announce in advance in general terms certain objects as commanding their approval, and permitted parties to form corporations for such purposes on declared terms and conditions.

In one class of cases it made it the duty of parties seeking to organize corporations to submit their charters to the district attorney of the district of the domicil of the proposed corporation for examination as to its legality, and authorized a judicial issue on that subject to be raised and determined in the event of an opinion by the district attorney adverse to its legality.

In other classes, no person was specially designated to perform such duty, but the matter of the public utility and advantage of the corporations to be formed was left at large; and specially was this the case in Act No. 36 of 1888.

Throughout the whole legislation and behind it, had constantly rested the principle that corporations should be created "for the promotion of some object of general utility" and for none other.

It can not be conceived that the legislature should have ever intended to confer upon three or more persons the right to determine of themselves and for themselves (and that finally) that the objects for which they were about to organize were legal and useful and proper, and to be permitted on the strength of that conclusion to do

business as such without let or hindrance from any quarter, except in cases of violation of the provisions of their various charters.

We think that wherever the power or legality of a person to act in respect to some particular matter is based and predicated essentially upon the authority of another, it is not only the right, but it is the duty of that other to take active steps at once to have the claim of the existence of such authority declared unfounded, if such it was, and we see no difference in this matter between private citizens and the State.

The exercise of this power and duty is essential not only for the protection of the public at large, but really that of the parties themselves who enter into such organizations, for it may well happen that persons organizing in good faith or belonging to organizations in which they deem themselves secure by limited liablity may wake up to find themselves confronted by demands of absolute liability, based upon the ground that the objects of the corporation were outside of the provisions of the law authorizing such bodies.

We do not mean to say that the parties themselves on discovering their danger, would not be authorized to put an end to the organization on that ground subject to their existing obligations in favor of third persons. That course was authorized by this court in the case of the Factor's and Trader's Insurance Co. vs. New Harbor Protection Co., 39 Ann., 583, but this is an independent remedy on their part not inconsistent with the duty of the State to save them harmless from acts done on the strength of its sanction and permission before they themselves have come to a knowledge of their real situation.

There are so many possible injuries to result in different ways and to different persons from unauthorized action of this character, that the right of the State to put an end to it, if existing, can not, we think, be properly questioned.

To permit a small number of persons to operate in business to an indefinite extent, under exceptional limited liability, without the necessity of making report at any time of the changing, shifting conditions of such business, and without any official authority provided for supervision over their action, is an extraordinary and dangerous condition of things, and the only wonder is that more disastrous results should not have followed from its existence than seems to have been the case.

State vs. Debenture Guarantee & Loan Co., Ltd.

The State has, undoubtedly, the right to be heard in this case. Whether it has presented its demand in proper manner, and if so, whether the demand be well founded in law and fact, are different matters.

It is urged that the State by citing the defendant as a corporation, and through parties acting as officers of a corporation, has admitted the existence of the corporation and estopped itself from contesting the same.

It is claimed that the action, if admissible at all, should have been directed against the parties who organized the corporation or those claiming to be now members of it. There is no force whatever in that proposition. When the parties who signed the act by which this defendant is claimed to have come into existence as a corporation did so, they ceased to have any authority to represent individually the rights or obligations of the intellectual body which they claim to have thus created, a body which, if it really existed, was, (under the terms of our civil code) a body separate and distinct from the persons who composed it.

A judgment declaring the corporation never to have existed, or declaring its charter forfeited, if held to have ever existed, would not be *res judicata* against the body itself if not present and represented in the litigation by its declared legal representatives.

It could not be assumed in advance, as a matter of fact or law, that the pretensions and claims of the State were well founded; it would be a begging of the question to do this.

The real self-styled corporation has a right to be heard in the matter; in fact no effective judgment could be rendered in the premises without it.

When the parties went before the notary and attempted to create a corporation, and selected certain parties to act officially and judicially for and in behalf of the corporation, they authorized those parties holding those positions *de facto* to represent their interests in all matters connected with their claims in and under that organization as to its right to have existed or to be perpetuated.

They constituted these parties as the common agents of all parties concerned in the existence or perpetuation of the corporation, not only the original incorporators, but the subsequent holders of stock.

The original incorporators may or may not be presently interested in or connected with the defendant. After launching out the new

corporation, they may have separated from it. They certainly do not, as individuals, represent the present holders of stock therein.

It would have been better, however, to have made them co-defendants.

That course was pursued in the Factor's and Trader's case referred to, but we do not know that it was essential to have done this. There are good reasons why all the present stock-holders should not be made parties; in the first place, they are too numerous, and in the next place, their names were not of record in the recorder's office when this suit was brought, and the State could not be expected to know, or be called upon to ascertain who they were. We see no inconsistency in calling the defendant into this litigation as a corporation and citing it as a corporation through its officers and asking the court to declare that it had never had existence as such. Homestead Co. vs. Lingman, 46 Ann., 1123.

The parties who are acting on its behalf do not pretend to be acting on their own account.

The wrong asserted by the State, and so far as the State is concerned is, that certain business is being carried on under the sanction of its name without right or authority, and that this condition of things should be stopped by injunction.

The State is not attacking the business carried on as an illegal business, carried on by the parties as individuals, but as carried on as a corporation.

For that purpose, the parties representing the so-called corporation are certainly those with whom the State should proceed contradictorily.

The demand of the State, if sustained, will certainly have its correct legal result—the discontinuance of the business under the guise of its being conducted by a corporation under a limited liability on the part of those connected with it.

There is no more inconsistency in bringing defendant into court as a corporation to have it declared to be not such, than there would be to allege in a pleading the existence of a judgment, and to pray that it be decreed to have been and to be an absolute nullity, nor to bring into court a party as a husband to have his marriage with the plaintiff decreed never to have legally existed.

The existing *status* is recognized temporarily, solely for the very avowed purpose of having it declared to be without foundation. We

think the attorney general was vested with full authority to bring this action on behalf of the State.

This particular case has been submitted to us substantially without argument, it being, evidently, part of a general attack upon the debenture companies whose charters have been sought to be annulled or set aside by the attorney general.

The secretary of the defendant as a witness for the State, in answer to a question asked him, declared it had no legal connection with the debenture companies referred to, though it had loaned money on some of the debentures of those companies; had bought some, and guaranteed some of them.

The mere fact that it may have done this would not carry with it as a consequence, the illegality of the corporation if the general business of loaning money on debentures or guaranteeing debentures generally would be authorized.

We can not take official knowledge of what debentures are, and whether they are all of one character, or whether they differ, and no evidence has been placed before us on that subject.

We think, however, we are justified in assuming that debentures of all kinds bear sufficient resemblance or analogy to stocks or bonds to make dealing in them by way of purchase and sale, fall under the designation of stock-jobbing, which is a character of business prohibited in corporations in this State. "Stock-jobbing" is not defined by law, but the Century dictionary defines it as "the business of dealing in stocks or shares; the purchase and sale of stocks, bonds, etc., as carried on by jobbers who operate on their own account."

The allegations of plaintiff's petition in this case were drawn up, as we have said, under an evident mistake as to defendant's charter and the business it was engaged in, and as a consequence, they are, as directed against this particular corporation, very faulty and incorrect.

There is in reality very little under the pleadings on which to base a judgment against it so far as its business is concerned. There is one feature of the case, brought to our notice, which, we think, calls for judicial action on our part.

It is shown by the evidence that, although, the defendant's charter authorized it to commence business only when one thousand shares of its stock should have been subscribed, it has done so when only a few hundred have been subscribed for. It is without right or

authority under such circumstances to act as a corporation, and it is our duty to so decree.

It is therefore, ordered, adjudged and decreed that the judgment appealed from, insofar as the same decrees the nullity and forfeiture of defendant's charter, be affirmed, and that the same, in so far as it appoints a receiver or liquidator, be reversed, reserving to the State of Louisiana, and all other parties in interest, all rights under the law relative to the appointment of a receiver or liquidator to take charge of, liquidate and settle the affairs of said corporation.

## ON APPLICATION FOR REHEARING.

BLANCHARD, J.   In this case, on the 22nd of June, 1899, as relates to the appointment of a receiver or liquidator, a decree of the court was handed down, which, in part, read as follows, viz:

"That the said judgment, in so far as it appoints a receiver or liquidator, be reversed, reserving to the State of Louisiana and all other parties in interest all rights under the law relative to the appointment of a receiver or liquidator."

The attorney general and associate counsel have filed an opplication for rehearing and so have the counsel for defendants.

The State avers that the public interest, and, particularly, the terest of the debenture holders, demand a settlement of the question as relates to the appointment of a receiver or of a liquidator; and the State asks that the liquidator, appointed by the governor, be recognized.

These cases were argued late in the session.   The argument was directed to the question of the legality vel non of the charter under which the respective companies carried on business.

The illegality of the charter was decreed.   The court considered that, as to liquidator or receiver vel non, contradictorily with parties in interest, the question can be considered in the District Court to which the judgment is remanded for execution.

The whole question as to the appointment of liquidator or receiver is left at large and to be considered as an original question. Whether the appointment of liquidator lies with the governor or of receiver with the court or the parties in interest we do not determine. It is left as an open question.

FIFTY-FIRST ANNUAL REPORTS, 1899.    1889

State ex rel Schwan vs. Judge and Sheriff.

The judgment appealed from except in so far as altered or amended by this court, is affirmed.

Rehearings refused.

MONROE, J., takes no part.